**UNITED STATES of America and Carl Rosen, Revenue Agent of the Internal Revenue Service, Plaintiffs-Appellants,**

v.

**Alvin I. MALNIK, Defendant-Appellee.**

**No. 72–3153.**

United States Court of Appeals, Fifth Circuit.

Feb. 8, 1974.

Robert W. Rust, U. S. Atty., Mervyn L. Ames, Asst. U. S. Atty., Miami, Fla., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, John A. Townsend, Attys., Tax Div., Dept. of Justice, Washington, D. C., for plaintiffs-appellants.

E. S. Corlett, III, Miami, Fla., Harvey M. Silets, Chicago, Ill., for defendant-appellee.

Before WISDOM, DYER and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

This is an appeal from an order of the district court dismissing a petition to

.enforce an Internal Revenue Service summons issued under 26 U.S.C. § 7602.[1]

The summons was issued on March 16, 1971, by Carl K. Rosen, an Internal Revenue Agent, to taxpayer Alvin I. Malnik, requiring him to give testimony and produce books and records[2] for the investigation of his tax liability for the years 1959, 1960, 1962 and 1963. Mr. Malnik was scheduled to appear before Agent Rosen on March 29, 1971, but the appearance date was postponed twice. Finally, Mr. Malnik's attorney, Harvey M. Silets, conferred with the Assistant Regional Counsel for the Internal Revenue Service, and it was mutually agreed that taxpayer Malnik would not appear personally at all. Instead, the Internal Revenue Service agreed to accept a written statement signed by taxpayer Malnik and his attorney to the effect that, had taxpayer personally appeared, "he would have asserted his appropriate constitutional privileges to all relevant and material questions propounded to him and to the production of such of the records therein enumerated in his possession." On the basis of this letter, the Internal Revenue Service did not require taxpayer to appear or to produce books and records under the summons. More than seven months after this mutual agreement, however, on December 7, 1971, the Internal Revenue Service filed a petition to enforce the summons. Although the district court first ordered compliance with the summons, on rehearing the court denied enforcement and dismissed the petition.

The following issues are presented on appeal: (1) whether the mutual agreement between the Internal Revenue Service and taxpayer Malnik constitutes a "blanket" refusal to answer questions based on the Fifth Amendment, and (2) whether the district court properly sustained taxpayer's Fifth Amendment objection to produce the requested books and records.

---

1. Sec. 7602 provides as follows:

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

2. The summons required Malnik to produce the following:

General ledgers; general journals; accounts receivable ledgers; escrow ledgers, cash receipts and disbursement journals; fee income invoices and journals; purchase invoices; deposit tickets, cancelled checks and bank statements of the domestic and foreign bank accounts from which accounts you had the right of ownership and withdrawing funds; closing statements, purchase, sales and loan agreements from which agreements you derived income, expenses, loans for yourself and third parties, and interests in various enterprises and franchises; broker statements, partnership agreements, journals and ledgers, all specifically related but not limited to your law practice, real estate transactions, mortgage and loan businesses, banking business and investments in closely-held and publicly owned corporations. The records summonsed are those of all corporations in which you were either a stockholder, officer, and director and which records are now in your possession or control including domestic and foreign corporations, including the World Bank of Commerce, Ltd. and the World Bank of Commerce (Overseas) Ltd. of the Bahamas. The foreign banks referred to above include but are not limited to the Barclay Bank and the Bank of World Commerce, Bahamas and the International Credit Bank, Switzerland.

Although we disagree with the reasons underlying the district court's disposition of this case, we affirm.

## I.

■ In Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), the Supreme Court enunciated the standard for measuring when a witness may properly claim his right against self-incrimination, and thus refuse to respond to questioning.

". . . To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'"

*Id.*, at 486–487; *see* United States v. Coffey, 198 F.2d 438, 440 (3rd Cir., 1952). A proper application of this standard implicitly requires that specific questions be propounded by the investigating body, and the claim of the right against self-incrimination must be claimed in response to each. A "blanket" refusal to answer all questions is unacceptable. United States v. Ponder, 475 F.2d 37, 39 (5th Cir., 1973); United States v. Ellsworth, 460 F.2d 1246, 1248 (9th Cir., 1972); Capitol Products Corp. v. Hernon, 457 F.2d 541, 542–543 (8th Cir., 1972); United States v. Roundtree, 420 F.2d 845, 852 (5th Cir., 1969). *See also* United States v. Johnson, 465 F.2d 793, 796 (5th Cir., 1972); Wright & Miller, Federal Practice and Procedure, § 2018, at 142 (1970). Thus a subject of a subpoena should appear before the interrogating officer and under oath specifically claim his constitutional rights as to particular questions while answering others not presenting a threat of self-incrimination. *See* United

States v. Ellsworth, *supra*, 460 F.2d at 1248; United States v. Bell, 448 F.2d 40, 42 (9th Cir., 1971); Daly v. United States, 393 F.2d 873, 877–878 (8th Cir., 1968); United States v. Terry, 362 F.2d 914, 917 (6th Cir., 1966); United States v. Harmon, 339 F.2d 354, 359 (6th Cir., 1964), cert. den. 380 U.S. 944, 85 S.Ct. 1025, 13 L.Ed.2d 963; In re Turner, 309 F.2d 69, 71 (2nd Cir., 1962); Landy v. United States, 283 F.2d 303, 304 (5th Cir., 1960); United States v. Solon, 294 F.Supp. 880, 882 (E.D.N.Y., 1968), aff'd 405 F.2d 1211, 1212 (2nd Cir., 1968). On the basis of a record thus established, a reviewing court could scrutinize this record and determine whether the witness is mistaken in his claim " 'and that the answers *cannot possibly* have such tendency' to incriminate." Hoffman v. United States, *supra*, 341 U.S. at 488, quoting Temple v. Commonwealth, 75 Va. 892, 898 (1881).

■ Malnik first contends that the mutuality of the agreement with the Internal Revenue Service is different from one party's unilateral objection to answer all questions, and thus under these unique facts no blanket refusal to respond to questioning exists. We simply cannot agree. Malnik's Fifth Amendment objection to comply with the subpoena is presented to us in the absence of specific questions that may or may not tend to incriminate. To sustain his objection this court, as well as Malnik, would have to completely and accurately anticipate every question. Regardless of the mutuality of the agreement, we think such an objection constitutes a blanket refusal to comply with the subpoena and therefore is unacceptable.

■ Malnik also urges that the district court correctly applied the *Hoffman* standard and therefore properly dismissed the petition for enforcement of the subpoena. Because the trial judge "must be governed as much by his personal perception of the peculiarities of the case" in making the determination whether the privilege against self-incrimination may be sustained, Hoff-

man v. United States, *supra*, 341 U.S. at 487, quoting Ex parte Irvine, 74 F. 954, 960 (C.C.S.D.Ohio, 1896), Malnik argues that the surrounding facts and circumstances of this case justify the court's dismissal of the enforcement petition.[3] We do not believe, however, that the peculiarities of this case compel a dismissal of the petition. It is simply impossible to anticipate every question that might be asked and conclude that each would present a distinct possibility of self-incrimination if answered by the witness. This is not to say that if Malnik testifies and produces documents, he may not object to every question. It is just that we cannot speculate and say that any response to all possible questions would or would not tend to incriminate the witness. Therefore, we think that Malnik should have been required to appear pursuant to the subpoena and raise his constitutional claim with regard to specific questions.

3. Elaborating on this contention, Malnik describes four aspects of this case that are particularly peculiar. First, Malnik points out the past relationship between himself and the Internal Revenue Service. Malnik has previously been tried and acquitted on two criminal tax charges relating to the same years under investigation by the instant summons. Second, taxpayer Malnik urges that there is a possibility of incrimination under United States v. Beacon Brass Co., 344 U.S. 43, 73 S.Ct. 77, 97 L.Ed. 61 (1952). Under *Beacon Brass*, Malnik might be subject to prosecution for making false representations to government agents in an attempt to evade taxes. Additionally, Malnik asserts that his answering questions would expose him to possible charges for perjured testimony given in the prior trial on criminal tax charges and for making false statements to federal officers. 18 U.S.C. § 1001 (1970). Third, Malnik says the government's contention that there is no possibility of instituting criminal proceedings against him as a result of the investigation is unfounded. Even though Agent Rosen's only functon is to investigate civil tax liability, he has an obligation to report any possible criminal violations of which he may learn during the investigation. Finally, Malnik argues that the question by question approach is not the exclusive means of properly invoking the Fifth Amendment claim against self incrimination.

## II.

The second issue is whether the production of books and records of designated corporations and partnerships is subject to Malnik's Fifth Amendment claim against self-incrimination. With regard to corporations, it is well established that a corporate officer or custodian of books and records must produce such records even though they might tend to incriminate the witness. United States v. White, 322 U.S. 694, 699, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); Wilson v. United States, 221 U.S. 361, 384, 31 S.Ct. 538, 55 L.Ed. 771 (1911). This rule is premised upon the governmental necessity to investigate such organizations, presumably conceived for the benefit of the public. Hale v. Henkel, 201 U.S. 43, 74–75, 26 S.Ct. 370, 50 L.Ed. 652 (1906). The one exception to this rule, which was relied on by the district court,[4] is when the

4. As an alternative ground for refusing to enforce the summons with regard to corporate documents, the district court held that it was too broad and unclear. We recognize that enforcement of an unclear and overly broad summons would violate the Fourth Amendment's proscription of unreasonable searches and seizures. United States v. Morton Salt Co., 338 U.S. 632, 652–653, 70 S.Ct. 357, 94 L.Ed. 401 (1950); Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 208, 66 S.Ct. 494, 90 L.Ed. 614 (1946). And we are also aware that a district court's determination that a summons is overbroad or unclear is generally within its discretion. United States v. Ruggeiro, 425 F.2d 1069, 1071 (9th Cir., 1970); Dunn v. Ross, 356 F.2d 664, 667 (5th Cir., 1966). But we do not require the revenue agent to describe the books and records he seeks in minute detail. The documents must be described only with "reasonable particularity" so as to give the witness sufficient information to determine which records are to be produced. First National Bank of Mobile v. United States, 160 F.2d 532, 535 (5th Cir., 1947); see United States v. Dauphin Deposit Trust Co., 385 F.2d 129, 131 (3rd Cir., 1967), cert. den. 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981. Moreover, if a summons appears to be overly broad and therefore unenforceable, the district court may modify the summons and delineate appropriate limitations so that it sufficiently describes the documents sought. Dunn v. Ross, *supra*,

records are held by the corporate officer or custodian in a personal, as opposed to a representative, capacity.[5]

Significantly, however, the distinction between personal and representative capacity has been narrowly defined. Even when the corporation has had only one stockholder, the courts have declined to hold that the corporate records and books were held in a personal capacity. Wright v. Detwiler, 345 F.2d 1012 (3rd Cir., 1965); Hair Industry, Inc. v. United States, 340 F.2d 510, 511 (2nd Cir., 1965), cert. den. 381 U.S. 950, 85 S.Ct. 1804, 14 L.Ed.2d 724 (1965); United States v. Guterma, 272 F.2d 344, 346 (28nd Cir., 1959); Christianson v. United States, 226 F.2d 646, 653 (8th Cir., 1955); see United States v. Crespo, 281 F.Supp. 928, 936–937 (D.C.Md., 1968). The only case we have found in which a corporate officer or custodian can possess corporate records in a personal capacity, and consequently claim the privilege against self-incrimination, is when it is a foreign corporation. Application of Daniels, 140 F.Supp. 322, 327–328 (S.D.N.Y., 1956).

Relying initially on the government's failure to deny Malnik's contention that he held the corporate records in a personal capacity, the district court refused to require compliance with the summons. But we feel that this reason is an insufficient basis for denying enforcement of the petition under the peculiar circumstances of this case. Indeed, if Malnik can demonstrate that he holds these records in a personal capacity, he should be provided with the opportunity to do so. We cannot agree, however, that Malnik set forth sufficient evidence to show that the records were held in a personal capacity and thus subject to his claim against self-incrimination.

With regard to partnership documents, the Supreme Court in United States v. White, supra, set forth the test for determining whether such books and records are subject to the claim against self-incrimination. Essentially, the documents are not subject to Fifth Amendment rights if "the organization has a character so impersonal in scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interest of its constituents." Id., 322 U.S. at 701. Malnik contends that, because he claimed his rights under the Fifth Amendment, it is now encumbent upon the government to come forward and prove the impersonal character of the

356 F.2d at 667; Venn v. United States, 400 F.2d 207, 212 (5th Cir., 1968); Falsone v. United States, 205 F.2d 734, 739 (5th Cir., 1953); see United States v. Bowman, 435 F.2d 467, 470, n. 6 (3rd Cir., 1970). We emphasize, however, that nothing we say in this regard authorizes the production of documents that are irrelevant or immaterial to the investigation.

Additionally, we are not persuaded by Malnik's reliance on United States v. Solomon, 71–1 USTC ¶ 9284 (S.D.Fla., June 12, 1970), aff'd. 437 F.2d 110 (5th Cir., 1971). In *Solomon* there was a demand for corporate records of a particular corporation, but there were two corporations with almost identical names. That problem does not seem to arise under these facts because the IRS requests the production of documents of all corporations.

5. In United States v. White, *supra*, 322 U.S. at 699, the Supreme Court noted the personal character of the right against self-incrimination.

"Since the privilege against self-incrimination is a purely personal one, it cannot be utilized by or on behalf of any organization, such as a corporation. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771; Essgee Co. v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917. See also United States v. Invader Oil Corp., D.C., 5 F.2d 715. Moreover, the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. But individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations."

**688**

partnership. *See* United States v. Schoendorf, 307 F.Supp. 1034, 1037–1038 (E.D.Wis., 1970); Application of Weiss, 283 F.Supp. 97, 98 (E.D.N.Y., 1968); United States v. Cogan, 257 F.Supp. 170, 172 (S.D.N.Y., 1966). To the contrary, the government contends that, since under *Hoffman* the person invoking the privilege must show that it was properly invoked, the claimant here must demonstrate the personal character of the organization before he is entitled to claim the right against self-incrimination. *See* United States v. Quick, 336 F.Supp. 744, 745–746 (E.D.N.Y., 1972).

Presumably, the district court denied enforcement of the summons with respect to partnership records for the same reason it denied enforcement regarding corporate records. But the trial court's record does not disclose whether the partnership was of such a personal character so as to subject the books and records to the partners' rights under the Fifth Amendment. Because the district court failed to make a clear determination in regard to the partnership records, we decline to make that determination now.

### III.

 While we disagree with the district court's dismissal of the petition to enforce the subpoena, there is still a basis on which to affirm its ultimate conclusion. We believe that the mutual agreement between the IRS and Malnik that he need not appear under the summons constitutes a waiver of any rights the IRS may have had.[6] The IRS specifically agreed that Malnik need not appear, and yet seven months after entering into this agreement they asked the district court to compel him to comply with the summons. Moreover, we feel that the agreement constitutes a waiver not only with regard to Malnik's

testimony, but also regarding the production of documents, for we find nothing in the agreement that would limit its meaning to cover only testimony. Therefore, based solely on the government's indiscriminate agreement that Malnik need not comply with the demand of the summons, we affirm.

---

6. Because we disagree with the reasoning of the district court, but affirm its judgment on a wholly different ground, we do not think that the doctrine of *res judicata* would preclude the IRS from issuing another subpoena pertaining to the same subject matter. J.

Moore, Federal Practice ¶ 0.416[2], at 2232 (1965).

