UNITED STATES of America,
Petitioner,

v.

ARTHUR YOUNG & COMPANY,
Respondent,

and

Amerada Hess Corporation, Intervenor.

No. M–18–304 (KTD).

United States District Court,
S. D. New York.

Aug. 26, 1980.

John S. Martin, Jr., U. S. Atty., New York City, for petitioner; Katherine J. Trager, New York City, of counsel.

Carl Liggio, New York City, for Arthur Young & Co.

Obermaier, Morvillo, Abramowitz & Fitzpatrick, Milbank, Tweed, Hadley & McCloy, New York City, for intervenor; Robert G. Morvillo, Roger B. Oresman, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

This matter comes before the court on an order to show cause why respondent, Arthur Young & Company [hereinafter referred to as "Young"], should not be compelled to obey an Internal Revenue Service [hereinafter referred to as "IRS"] summons directing it to testify and to produce for examination certain documents pertaining to the tax liabilities of intervenor Amerada Hess Corporation [hereinafter referred to as "Amerada"] for tax years 1972, 1973 and 1974. The summons was issued pursuant to Section 7602 of the Internal Revenue Code, 26 U.S.C. § 7602,[1] and requested the documents set out in the margin.[2] The underly-

---

1. 26 U.S.C. § 7602 provides as follows:

Examination of books and witnesses

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

2. The following documents relating to Amerada Hess Corporation all for the years 1972 through 1974:
   1. Engagement letter(s)
   2. Management letter(s)
   3. Representation letter(s)
   4. History file(s)
   5. Standard workpaper index(s)
   6. Administrative file(s)
   7. Workpaper review file(s)
   8. Engagement planning file(s)
   9. Confirmation control file(s)
   10. Significant events file(s)
   11. Audit program file(s)
   12. Audit workpaper's file(s)
   13. Tax pool analysis file(s)
   14. File(s) prepared during the course of work performed for the "special committee", including agreed procedures, selection process, reports, schedules and other workpapers
   15. The name of the partner in charge, engagement partner and/or senior auditor who directed the audit of Amerada Hess Corporation
   16. Any other information pertinent to the audit of Amerada Hess Corporation covering the years 1972, 1973 and 1974
   17. All workpapers, reports, records, correspondence, reconciliations and information relative to the United States Corporate Income Tax Returns (Forms 1120) of Amerada Hess Corporation that were prepared by Ar-

ing investigation was commenced in August of 1977, after Amerada made certain disclosures to the IRS concerning the deduction of some $7,830 in questionable payments during the years in question.

On January 12, 1978, two IRS summonses ["the New Jersey summonses"] were served on Amerada at its New Jersey offices. Amerada notified the IRS that it would not comply with these summonses, whereupon the IRS filed an enforcement petition on April 26, 1978, in the United States District Court for the District of New Jersey.

After an evidentiary hearing, the late Judge Barlow entered an order on January 22, 1979, granting the petition to enforce. *United States v. Amerada Hess Corp.*, No. 78–753 (D.N.J.1978) ("Hess I"). The Third Circuit affirmed, 619 F.2d 980 (1980). Although the documents sought, and now turned over, pursuant to the New Jersey summonses are not the same as those sought in the present action, some of the issues litigated and resolved there are germane to these proceedings, as will be discussed below.

The summons in question here was served on Young by Special Agent Kenneth Kalemba of the IRS on April 17, 1978. Notice of this summons was sent to the taxpayer Amerada by certified mail on April 18, 1978. On April 21, 1978, the taxpayer, utilizing the provisions of 26 U.S.C. § 7609(a), directed Young, its outside auditor, not to comply with the summons.

The instant enforcement petition was filed by the IRS in this court on October 15, 1979 under 26 U.S.C. §§ 7402(b) and 7604(a). Respondent Young opposes the summons in its own right, as a matter of its own policy judgments, and not only because it has been directed by its client Amerada not to comply. Young advances five arguments against compliance. Amerada has also in-

tervened and advances arguments of its own against compliance.

### Young's Arguments

Young puts forth what it characterizes as basic policy arguments as to why it should not be ordered to comply with the IRS summons. The first of these arguments is that the summons requests virtually every piece of paper in Young's files concerning Amerada, totalling approximately a quarter of a million pages, and that such an overbroad, generic request violates the second of the four requirements of *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964). Under *Powell*, the four essential criteria for the judicial enforcement of an IRS summons are:

> that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed

> . . . .

> 379 U.S. at 57–58, 85 S.Ct. at 255.

According to Young, a request such as the one at hand is so broad that it negates the court's oversight function and effectively makes the IRS summons self–enforcing, contrary to the intent of Congress as set out in 26 U.S.C. § 7604.

The IRS responds that it has, through the affidavits of its agents, made an initial showing that the four *Powell* requirements have been satisfied,[3] and that the burden is therefore on respondent to show that enforcement would be an abuse of the court's process. The IRS argues that this burden has not been met. It also argues that generic and extensive document requests have repeatedly been upheld by the courts.

---

thur Young & Company or under the supervision of Arthur Young & Company for the calendar years 1972, 1973 and 1974

**3.** The court has been furnished with affidavits covering each of the four *Powell* requirements, *supra*, for judicial enforcement of an IRS summons. The four grounds are covered respec-

tively by the affidavits of (1) Special Agent Kenneth J. Kalemba, and the Supplemental Affidavit of Special Agent G. Robert Armstrong; (2) District Director Harry Reiter, of the IRS New York District; (3) Revenue Agent Anthony Caputo of the IRS Newark District; and (4) Kenneth J. Kalemba, *supra*.

■ The cases cited by the IRS support its position and Young's attempts to distinguish them are unconvincing. In *United States v. Acker*, 325 F.Supp. 857 (S.D.N.Y. 1971), Judge Frankel approved a similarly broad IRS summons and construed 26 U.S.C. § 7602 as authorizing IRS inspection of documents which " 'might' throw light upon subjects under legitimate inquiry." 325 F.Supp. at 862. As Judge Frankel reasoned in *Acker*, the IRS agents cannot and need not establish "probable cause" to justify their document demands. What they must do, and have done in the case at hand, is to show that the documents are sought in pursuit of a legitimate purpose and may be relevant to that purpose. *See United States v. Powell, supra*, 379 U.S. at 57, 85 S.Ct. at 254.

The end result of respondent's argument about generic document demands would be that a reviewing court must test each individual piece of paper for relevance and this cannot be.[4]

The materials demanded must be "sufficiently relevant to the investigation," *United States v. Harrington*, 388 F.2d 520, 523 (2d Cir. 1968), a standard to be applied to categories of documents, not to every single document within any category. So, for example, to look no further than the case just cited, it may be confidently supposed that not all the books and records there required to be produced (by a third party, not the taxpayer himself) would prove "relevant or material" to the subject being explored. But it was enough even where the burden was upon the third party there involved that there was "in the particular circumstances an indication of a realistic expectation rather than an idle hope that something [might] be discovered."
*United States v. Acker*, 325 F.Supp. at 862.[5]

Young attempts to distinguish the other cases relied on by the IRS on the grounds that the broad document requests approved in those cases were limited to records of actual transactions between the taxpayer and the third party. In most of the cases, however, the third party was a bank and the requests were only for records of transactions between the taxpayer and the bank. *United States v. Coopers & Lybrand*, 413 F.Supp. 942 (D.Colo.1975), *aff'd*, 550 F.2d 615 (10th Cir. 1977), is the one case that did involve an independent auditor, and made a distinction between transactional and other kinds of records. That case, however, is of no support to Young's attack on the breadth of the summons, for it denied enforcement of the summons only as to the audit program and tax pool analysis file. These issues will be discussed below.

■ Young's first argument must fail in that the present summons cannot be resisted simply on the grounds that it is overbroad.

Young next argues that its tax accrual files should, as a matter of law and policy, be protected from disclosure to the IRS. Tax accrual files, or the tax pool analysis papers, are the auditor's evaluation of the adequacy of the taxpayer–client's provision for taxes on the client's financial statements. They contain projections, opinions and hypotheses of possible tax consequences based on factual data derived from the client's records. Young argues that disclosure of such files to the IRS would seriously

---

4. "If what appellant desires is to have the district judge examine the materials *in camera* so as to increase his understanding of their relevancy and materiality to the tax investigation, this would be a task which, in most cases, certainly including this one, would be so burdensome and probably so impossible of performance that Congress could not have meant to impose it upon busy district judges."
*United States v. Noall*, 587 F.2d 123, 127 (2d Cir. 1978).

5. In a footnote to the quoted passage from *Acker*, Judge Frankel acknowledges that the Second Circuit in *Harrington* stressed that judicial protection is even more appropriate when sweeping demands are directed not to the taxpayer, but to a third party, as is the case with the present summons. However, fears of oppressing or harassing Young are muted here, since the IRS has agreed to inspect all the subpoenaed documents on site in Young's New York City and Tulsa, Oklahoma offices, and to pay for the costs of any documents it wishes to reproduce.

undermine the ability of the client to deal candidly with its auditor. It also argues that since they consist primarily of opinion, such files are not relevant to determining the client's tax liability. Finally, Young seeks to assert an indirect auditor–client privilege by arguing that the client enjoys an expectation of privacy for communications to its auditor.

Although case law on this precise question is spare and in apparent conflict, enough of a pattern has emerged to support the view that the tax accrual workpapers should be turned over.

In *United States v. Coopers & Lybrand,* 413 F.Supp. 942 (D.Colo.1975), the District Court held the IRS had failed to establish the relevance of the audit program (discussed below) and of the tax accrual files of Johns–Manville's outside auditor. Accordingly, the court refused to order and enforcement of the summons. The Tenth Circuit affirmed, 550 F.2d 615 (10th Cir. 1977), relying on the undisputed facts that the files in question were not used in connection with the preparation and filing of the taxpayer's returns and that the auditor had no responsibility for any of the client's tax matters. That is not quite the situation which obtains in the case at bar.

The opposite result was reached in *United States v. Arthur Andersen & Co.,* 474 F.Supp. 322 (D.Mass.) *dismissed without opinion,* 612 F.2d 569 (1st Cir. 1979) (Table), where the court was not persuaded by Andersen's accountant–client privilege argument or by its relevance argument. Rejecting the reasoning of *Coopers & Lybrand, supra,* the District Court in *Andersen* relied on the language of § 7602 to conclude that the audit program and the tax accrual papers were "both relevant and reachable," in that the statute's "expansive language invites, and has generally been accorded, a liberal construction." 474 F.Supp. at 329. The court specifically rejected the argument that the papers should be shielded from disclosure because they were not used in preparing the tax returns under investigation.

The respondent and intervenor in *Arthur Andersen, supra,* failed to obtain a stay of the enforcement order from the District Court, the First Circuit, or the Circuit Justice, and accordingly turned over the documents requested in the summons. Their appeal from that part of the order below was consequently dismissed as moot.

Any doubt as to which of these conflicting precedents should be followed in this instance is laid to rest by *United States v. Noall,* 587 F.2d 123 (2d Cir. 1978) *cert. denied,* 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979). *Noall* is not directly in point because the IRS summons in that case sought internal audit documents, and not the records of an independent auditor. However, the force and reasoning of *Noall* lead all but inescapably to the conclusion that the result in this Circuit would not be changed by this difference. Indeed, even though the Court of Appeals specifically reserved comment on the exact question presented here, *see* 587 F.2d at 127 n.5, the court left no doubt that it rejected the Tenth Circuit's reasoning in *Coopers & Lybrand, supra :*

> In refusing to enforce the summons in regard to the tax pool analysis, both the district court and the court of appeals gave much weight to the fact that this was not used in preparing the company's income tax return, 413 F.Supp. at 950, 953–54, 550 F.2d at 620–21. To the extent that the decision was influenced by this factor, it is not authoritative in this circuit.

587 F.2d at 127 (footnotes omitted).

Furthermore, *Noall* has been applied by a court outside this Circuit to order the disclosure of an independent auditor's "bluebacks," or audit reports on the taxpayer's internal accounting systems which were prepared by an independent auditor. *See United States v. The Riley Company,* 79 C. 4211 (N.D.Ill., January 8, 1980).

The IRS has made by affidavit, the showing of relevance required by *Powell, supra. See* Reiter Affidavit, ¶ 10; *United States v. Noall, supra,* 587 F.2d at 126; *United States v. Arthur Andersen, supra,* 474 F.Supp. at

329–30. Respondent's arguments that the tax accrual files are irrelevant and that their disclosure would undermine the auditor's function, are neither convincing nor supported by the weight of authority. *See Noall, supra,* 587 F.2d at 126. Respondent's argument based upon a supposed analogy to Exemption 5 in the Freedom of Information Act (dealing with internal government memoranda) is so wide of the mark that it does not merit discussion.

■ Nor can respondent be heard to assert an auditor–client privilege. The Supreme Court has refused to recognize such a privilege, *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) and the First Circuit has very recently adhered to that view even where, as is the case here, the client claims that the information was given to the auditor under an expectation of privacy. *United States v. Arthur Andersen,* 623 F.2d 725, at 728 (1st Cir. 1980) (affirming District Court's enforcement of that part of the summons pertaining to Andersen's testimony about the tax accrual papers). While there may be an expectation of privacy insofar as the world at large is concerned, Amerada cannot reasonably have such an expectation with regard to the IRS which, the taxpayer knew, could call for all materials underlying the tax returns and payments.

■ Accordingly, I hold that respondent Young must make available for inspection by the IRS the tax accrual workpapers for Amerada covering the years in question.

Young makes basically the same arguments concerning its audit program workpapers for Amerada. These papers are the statement of the independent auditor's plan and program for the conduct of the audit. They are the auditor's methodology, the guidelines as to which areas and which records of the client will and will not be examined. Young argues that the audit program is confidential information which, if revealed to the client, might permit it to circumvent the audit, thereby defeating its very purpose.

Respondent's position on the audit program is sound. By definition, those papers are clearly less relevant to Amerada's tax liability than the tax accrual papers which, even though they consist in part of projection and hypotheses, also deal with facts and figures that form the basis of Amerada's tax liability, which the IRS desires to verify. The audit program, in contrast, stands many steps removed from the question of the actual tax liability.

■ Not only is the relevance of the audit program weaker, but the reasons for not disclosing it are stronger. The Second Circuit noted this in *Noall, supra,* 587 F.2d at 126 n.3, referring to the District and Circuit Courts' opinions in *Coopers & Lybrand, supra.* The audit papers may be convenient for the IRS as a guide in its research, but convenience is not the touchstone here. The audit papers do not contain relevant data from which the IRS can assess the correctness of Amerada's tax returns. Accordingly, I must agree with what is explicit in both *Coopers & Lybrands* opinions, *supra,* and with what seems implicit in *Noall, supra,* and deny enforcement of that part of the instant summons, namely items 11 and 12, which seek production of Young's audit program and workpapers.

Young next argues that the 29 binders known as the Special Report Workpapers fall within the scope of the work product doctrine and therefore are protected from disclosure under *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Young claims that it prepared these papers under a retainer from Amerada to assist Amerada's outside counsel, Milbank Tweed, in conducting an investigation into whether the corporation had made any improper foreign payments or political contributions.

The dispositive question on this claim is whether the papers in question were prepared in anticipation of litigation. *In re Grand Jury Subpoena,* 599 F.2d 504 (2d Cir. 1979). Judge Barlow in *Hess I* was faced with an issue tangentially related to the instant question. There, the IRS sought the names of all persons interviewed by Young in connection with the compilation

of those 29 binders. A claim of privilege was raised by the taxpayer and in sustaining that claim, Judge Barlow held that the binders had been accumulated in contemplation of litigation.

Young argues that the IRS is bound by Judge Barlow's determination that the Special Report was prepared to assist counsel in anticipation of litigation and therefore protected from disclosure.

The IRS argues that the work–product doctrine does not apply in a summons enforcement proceeding, since the IRS is not bound by the rules of evidence applicable in judicial proceedings, but rather has a broad mandate from Congress to verify taxpayers' returns. The IRS argues that its investigative powers are not limited by, *inter alia*, the work–product doctrine. The Service further argues that even if the doctrine is held to be applicable, as some courts have found, that the privilege is not absolute but may be, and in this case has been, overcome by the IRS's showing that it has "substantial need" for the materials in question and that the information cannot be obtained from any other source without undue hardship.

I agree with Judge Barlow's reasoning in *Hess I, supra,* that a party should not be completely barred from asserting the work–product privilege in the context of an IRS summons, but that in light of the unique inquisitorial mandate of the IRS, its burden of demonstrating "substantial need" to overcome the privilege should be reduced.

In passing upon the elements of the asserted privilege, I start from Judge Barlow's determination that the Special Committee was formed in anticipation of litigation.

I agree with respondent Young that the IRS has not met even a lowered burden of demonstrating both a substantial need for the Special Committee workpapers, and that the information contained therein cannot be obtained elsewhere without undue hardship. The IRS seems to rest on conclusory assertions of both need and hardship

and can buttress its claims only with the statement that it has had to seek judicial enforcement of every subpoena it has addressed to Amerada or to any of its third party record keepers. Merely to say that a taxpayer has asserted its rights is no showing of "undue hardship" on IRS. As a citizen, I am somewhat appalled at the attitude which would produce such an argument.

The IRS may have a lower burden to overcome a claim of work–product privilege, but it still has some burden. The Reiter affidavit, which attempts to state the relevance of the subpoenaed documents to the IRS investigation, makes specific reference to several of the itemized requests in the summons, but refers to the Special Committee papers, item number 14 only as follows:

> The remaining items, numbered 14 through 17, pertain to specific factors involved in the investigation.

(Reiter Affidavit, ¶ 3).

Furthermore, Young claims (Oresman Affidavit, ¶¶ 54–55) that the IRS has been furnished with the factual data relating to the alleged questionable payments which were the focus of the Special Committee investigation. Also, the names of the persons interviewed by the Committee have been ordered turned over in *Hess I, supra.* These submissions indicate how far the IRS is from overcoming the asserted work–product privilege. Accordingly, I find that the 29 binders prepared by Young for Milbank Tweed's investigation need not be turned over to the IRS.

Young's final argument is moot, in that the IRS has agreed to inspect all documents on site in either Tulsa, Oklahoma, or New York City, and has further agreed to bear the costs of reproducing any documents it wishes to retain.

### Amerada's Arguments

Intervenor–taxpayer Amerada has also advanced several arguments of its own against compliance. On one of these arguments, nothing more need be said since I

have already held that the Special Committee Workpapers need not be turned over.

■ Amerada also argues that Young's tax accrual file should not be turned over. The only new argument it advances on this point is that such files do not consist of "books, papers, records, or other data" under 26 U.S.C. § 7602. By Amerada's own admission, no precise definition of such documents is provided by either the Internal Revenue Code or the legislative history of § 7602. Amerada's suggested statutory construction of that section amounts to no more than the argument that Congress must have intended such documents to be limited to records of actual transactions, and exclusive of judgmental or evaluative material. This argument has already been addressed, *supra*. The IRS has a wide latitude in fulfilling its mandate to police our basically self–reporting tax system, and a restrictive interpretation of the type of documents reachable under § 7602 would inhibit or defeat this mission. *See, e. g., United States v. Bisceglia*, 420 U.S. 141, 145–46, 95 S.Ct. 915, 43 L.Ed.2d 88.

Amerada's final argument[6] is also without merit. It argues that the IRS has waived its right to seek enforcement by not insisting that Young appear on the return date of the summons, and because it did not institute this enforcement proceeding for several months after issuance of the summons.

■ There was no waiver by the IRS by reason of the lapse of time between issuance and institution of these proceedings. During this time, the Service was prosecuting other enforcement proceedings against Amerada and otherwise continuing the investigation.

Amerada, however, cites two cases in which the IRS was deemed to have waived enforcement by virtue of an agreement that respondent need not appear on the designated day. In *United States v. Malnik*, 489 F.2d 682 (5th Cir.), *cert. denied*, 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974), the IRS and the taxpayer's attorney agreed that instead of appearing to assert his Fifth Amendment privilege, the taxpayer would submit a written statement to the effect that, had he appeared, he would have asserted his appropriate constitutional privileges. The Fifth Circuit held that Malnick should have been required to appear and assert his constitutional claims to specific questions. However, the court went on to hold that the IRS had waived its right to seek enforcement because of its "indiscriminate` agreement that Malnik need not comply with the demand of the summons" 489 F.2d at 688.

In *United States v. Lipshy*, 79–2 U.S.T.C. 88,274 (N.D.Texas 1979), the District Court found a similar waiver by the IRS, relying on *Malnik, supra*. The court found that even though the IRS did not evidence any subjective intention of abandoning enforcement of the summons, its agreement to dispense with the essential step in the examination process, i. e., the meeting at a time and place certain, acted as a waiver. The court refused to accept the Service's characterization of this agreement as merely a courtesy to avoid the necessity of the respondent's making a lengthy trip merely to announce that he would not comply.

These cases do not carry the day for Amerada for several reasons. *Malnick* involved the assertion of the Fifth Amendment privilege which, as the Fifth Circuit pointed out, could not be asserted in a blanket statement but must be raised only to specific questions and demands which would then be subject to court review. No such issue is involved here.[7] Second, in the present case, the only evidence offered of any "agreement" by the IRS is contained in ¶ 11 of the Affidavit of Carl D. Liggio, Arthur Young's General Counsel:

---

**6.** By letter dated January 23, 1980, counsel for Amerada has withdrawn the defense that the summons was not issued in good faith, in light of the Third Circuit's affirmance of Judge Barlow in *Hess I*, 619 F.2d 980 (1980).

**7.** Because the Circuit Court in Malnik affirmed the District Court's refusal to enforce the summons, but did so on a wholly different ground, the IRS was not precluded from issuing another subpoena pertaining to the same material. 489 F.2d at 688 n.6.

11. Following this conversation with Mr. Kalemba, I reiterated this in a telephone conversation on Thursday, April 20, 1978 and further confirmed it in a letter to him on April 25, 1978, a copy of which is attached as Exhibit A to this Affidavit. In that letter I stated:

> As we further discussed when I met with you on April 17, I will be out of the area May 4, 1978, and thus unable to appear at the return date as established. *You indicated that because of our position with respect to the production, there was no need to appear and that the date was selected only to start the statutory period running.* (emphasis added).

The italicized portion could be read as an acceptance of an adjournment as much as an agreement to dispense with a meeting. In any event, it does not amount to an explicit "agreement" between the taxpayer and the IRS comparable to those in the cited cases.

Additionally, the IRS has changed its position on the "time and place certain" of the Amerada summons, and has agreed to examine the documents on site, as Amerada requested. Furthermore, in both *Malnik* and *Lipshy*, the IRS agreed to accept, in lieu of appearance, a written statement of respondent's objections. In the present case, no such agreement was reached. Indeed, Amerada instructed Young on April 21, 1978, not to comply with the summons, which was returnable on May 4. *See* Exhibit C to Enforcement Petition. No further formalism was required. The IRS, having no enforcement powers of its own, could hardly insist on compliance.

For all these reasons I find no waiver in the actions of the IRS following its issuance of the summons.

Accordingly, respondent Young is hereby directed to comply with the IRS summons of April 17, 1978 directing it to make available the requested documents pertaining to Amerada Hess, with the exception of the audit program (items 11 and 12), which is not relevant, and the Special Committee Report (item 14) which is protected under the work-product doctrine. All other items are to be made available for inspection by agents of the IRS at the Tulsa, Oklahoma or New York City offices of respondent. The IRS is to bear its own costs of reproducing whatever documents it deems necessary to copy.

SO ORDERED.