In the Matter of YALE EXPRESS SYSTEM, INC.

Application of BOSTON INSURANCE COMPANY.

United States District Court
S. D. New York.

Oct. 8, 1965.

Tell, Cheser, Werner & Breitbart, New York City, for movant.

Royall, Koegel & Rogers, New York City, for trustee.

Seligson & Morris, New York City, for debtors.

John M. Friedman, New York City, for Empire Trust Co.

Richard V. Bandler, Sidney Lapidus, New York City, and Theodore Sonde, Washington, D. C., for Securities and Exchange Commission.

TYLER, District Judge.

This is an application by Boston Insurance Company ("Boston") for a new hearing on the original application of the trustee to permit the latter to pay over to Boston certain accounts receivable collected by the debtor or its subsidiaries after July 12, 1965 from various shipper-customers of the debtor, and for related relief.

To place in context the present application by Boston, it should be noted that on July 28, 1965 the trustee brought on an application for an order permitting him to pay over such accounts receivable collected by the debtor or its subsidiaries on the theory that but for such collection, the receivables could have been set off by Boston against cargo damage or loss claims which Boston was and is required to pay under endorsements "BMC32" and "FF32" attached to the policies of insurance issued by Boston to the debtor and its subsidiaries. Boston was not a party to the previous application or the hearings thereon. By a memorandum filed on August 2, 1965, this court denied the trustee's application.

Principally because Boston was not a party to the previous application by the trustee, the matter has been considered *de novo* by this court, and to that end additional hearings have been held in which Boston and all other interested parties were invited to submit such facts as they deem to be pertinent, along with their arguments and memoranda of law. Upon considering all the matters submitted, including most particularly those proffered by Boston, I conclude that the August 2 order of this court should not be disturbed for reasons to be briefly discussed hereinafter.

It is undisputed that for a considerable period of time prior to the filing of the petition by Yale Express System, Inc. on May 24, 1965, that debtor and its subsidiaries carried cargo liability insurance with Boston. The pertinent policies contained, among other things, a $5,000 deductible clause providing in substance that the debtor and its subsidiaries would be responsible for the first $5,000 of any loss or damage to cargo of shipper clients of the debtor and its subsidiaries. In order to protect the public and as required by Section 215 of the Motor Carriers Act, 49 U.S.C. 315 and the implementing regulations of the Interstate Commerce Commission, however, the policies contained the aforementioned BMC32 and FF32 endorsements providing that Boston would insure the legal liability for the debtor or its subsidiaries on cargo losses incurred in commerce in an amount up to $1,000 per "disaster". A similar endorsement was made a part of the policies in compliance with the pro-

visions of Article 3–B, Section 63 of the New York Public Service Law relevant to shipments within the State of New York.

The endorsements in question further state that the obligation of Boston to shippers and consignees up to $1,000 per "disaster" exists, "irrespective of the financial responsibility or lack thereof or insolvency or bankruptcy of the insured". In addition, the debtor or its applicable subsidiary is obligated by these endorsements to reimburse Boston for any payments made by it under the BMC32 or FF32 endorsements.

For the legal underpinning of its present application, Boston presses its view that Section 68(a) of the Bankruptcy Act (11 U.S.C. 108(a)) in effect gives shipper-customers of the debtor a right to set off pre-reorganization cargo loss and damage claims against pre-reorganization freight charges owed to the debtor or its subsidiary in question. In practical terms, this theory of Boston and its understandable concern as evidenced by its application here can be best understood from the fact that as of the date the first petition for reorganization was filed, there were outstanding approximately 22,000 unprocessed claims which would presumably come within the ambit of the insurance policies issued by Boston. Unfortunately, although no one at this time can establish with accuracy the total sum of these claims in question, it is conceded that they come to an amount somewhere between $2,000,000 and $4,000,000.

As has already been indicated, I find nothing has been developed before me in the reopened hearings to change the views very briefly expressed in the memorandum filed on August 2, 1965. Nevertheless, it may be beneficial to set forth a slightly more detailed exposition of the principal reasons for the denial of Boston's application.

In the first place, neither the plain language of the endorsements nor the apparent purpose of the underlying sections of the Motor Carriers Act and the New York Public Service Law can be reasonably construed to authorize shippers to make set-offs under the provisions of Section 68(a) of the Act. As I read the endorsements, they command Boston to make the payments to the shipper in question, at least up to $1,000, irrespective of any insolvency or bankruptcy or reorganization proceedings on the part of the debtor or its subsidiaries. In other words, it would appear that Boston contracted to do what it now claims it should be legally and equitably relieved from doing.

From another vantage point, it is clear that Section 68(a) of the Bankruptcy Act permits allowance of a set-off only of "mutual debts or mutual credits". It is difficult to understand how Boston can establish true "mutuality" as contemplated by the statute since no debts or credits have arisen as between it and the shipper-clients of the companies in reorganization. But Boston argues that it nevertheless can stand in the companies' shoes as surety and thus confer upon itself the necessary "mutuality" vis-a-vis the shippers. Such an argument, in my view, does not fit the facts. Quite evidently, both Boston and the insured companies are directly liable to the shippers for loss or damage claims; but the shippers are indebted for freight charges only to the companies—and for debts arising out of transactions to which Boston must be considered a total stranger. As one of the opposing creditors puts it, Boston is in effect seeking subrogation, but of course subrogation is not provided for in Section 68(a) of the Act or, for that matter, in the policies or endorsements issued by Boston.

Even if I am incorrect in the foregoing construction of the pertinent endorsements and of Section 68(a) as applied to the facts here in question, I do not understand that any right of set-off as provided by Section 68(a) is mandatory, particularly in a reorganization proceeding of this kind which has been in

progress for a comparatively few months. Indeed, even in Chapter XI proceedings, it is the usual rule that, notwithstanding the seemingly mandatory language of Section 68(a), set-offs rest in the sound discretion of the court to be exercised in accordance with the peculiar circumstances involved and, of course, in accordance with general principles of equity. See Cumberland Glass Mfg. Co. v. DeWitt, 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042 (1915); Lowden v. Northwestern National Bank & Trust Co., 298 U.S. 160, 56 S.Ct. 696, 8 L.Ed. 1114 (1936). In implicity recognition of this principle, Boston urges that it would be inequitable to compel it to pay the damage claims in full and thereby be placed in a position of having to file claims in these reorganization proceedings for reimbursement. Within the context of these proceedings, there is nothing inequitable about placing Boston in this position, particularly inasmuch as it has charged and been paid premiums on the basis of the very endorsements which have been discussed and because there would seem to be no great unfairness in asking Boston to take its place along with other general unsecured creditors.

Moreover, although the present financial position of the debtor and its subsidiaries cannot be measured with accuracy, it seems clear that to compel the trustee to pay as much as $4,000,000 or even $2,000,000 at a time when he has been obliged to borrow to date upon authorized certificates of indebtedness the total sum of $950,000 for current operating expenses would be an improvident step for this reorganization court to take.

In this view of the matter, Boston and the debtor companies would be in a better position if Boston were to promptly process the shippers' claims in question as required by its policies so that both it and the debtors will be in a position to more accurately assess their respective obligations to one another and to the shippers.

The instant application is denied, and an order should be settled accordingly.