**In the Matter of The Bohack Corporation, Debtor-in-Possession.**

**The BOHACK CORPORATION, Plaintiff-Appellee,**

v.

**BORDEN, INC., Defendant-Appellant.**

**Civ. Nos. 77 C 2265 and 74 B 933.**

United States District Court,
E. D. New York.

Feb. 7, 1978.

---

Plunkett, Wetzel & Jaffe, New York City, for defendant-appellant; George E. Pataki, New York City, of counsel.

Shaw & Levine, Garden City, N. Y., for debtor-in-possession and plaintiff-appellee; J. Stanley Shaw, Jesse R. Levine, and William M. Rifkin, New York City, of counsel.

Memorandum of Decision and Order

MISHLER, Chief Judge.

The instant appeal presents a variety of interesting questions relating to the scope of the Bankruptcy Act's stay provisions and their interplay with section 68 of the Act, 11 U.S.C. § 108. Borden appeals from Bankruptcy Judge C. Albert Parente's October 14, 1977 order enjoining further prosecution of its counterclaim asserted against the debtor-in-possession, Bohack, in a plenary anti-trust action now pending before the United States District Court for the Eastern District of Pennsylvania. The essential facts are not in dispute.

Bohack, on July 30, 1974, filed a petition for arrangement with the bankruptcy court of this district pursuant to Chapter XI of the Bankruptcy Act. The petition was granted by order of the same date, and Bohack was continued as debtor-in-possession. 11 U.S.C. § 742. In conformance with section 314 of the Act, 11 U.S.C.

§ 714,[1] and Rule 11–44, Rules Bankr.Proc.,[2] the bankruptcy court's order included a provision expressly staying the initiation or continuation of all suits and claims against the debtor.[3] In compliance with the schedule subsequently drawn, Borden, on November 13, 1974, filed a proof of claim for $451,198.86 representing goods sold and delivered prior to the initiation of proceedings in arrangement.

Some two years later, Bohack, together with several other firms, filed suit in this court charging Borden and numerous other named defendants with violations of the anti-trust laws. Borden interposed its answer on December 30, 1976, and counterclaimed for the $451,198.86 originally sought under the proof of claim. On March 18, 1977, the action was transferred to the United States District Court for the Eastern District of Pennsylvania for consolidated pre-trial proceedings by the judicial panel on multi-district litigation.

By notice of motion dated March 31, 1977, Bohack moved in the Pennsylvania action for an order dismissing Borden's counterclaim, arguing that the district court, by virtue of the Rule 11–44 stay, was without subject matter jurisdiction. In the alternative, Bohack argued that the debt underlying Borden's claim was not mutual, and thus, could not be asserted as a set-off pursuant to Section 68 of the Act, 11 U.S.C. § 108. Borden opposed, but the court granted the motion holding that Borden's separate debt could not be set-off against the joint claim of Bohack and the others. Borden, however, successfully moved for reconsideration, and the matter was submitted on papers.

While the issue remained *sub judice*, Bohack filed suit in the bankruptcy court seeking an order enjoining the continued prosecution of the counterclaim. Thoroughly briefed and argued, the matter was ultimately decided in Bohack's favor.

1. Upon the filing and acceptance of a Chapter XI petition, the bankruptcy court may, pursuant to § 314 of the Act, 11 U.S.C. § 714,

. . . enjoin or stay until final decree the commencement or continuation of suits other than suits to enforce liens upon the property of the debtor, and may, upon notice for cause shown, enjoin or stay until final decree any act or the commencement or continuation of any proceeding to enforce any lien upon the property of a debtor.

2. Rule 11–44, Rules Bankr.Proc. provides in part:

(a) *Stay of Actions and Lien Enforcement.* A petition filed under Rule 11–6 or 11–7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except a case pending under Chapter 10 of this title, for the purpose of the rehabilitation of the debtor or the liquidation of his estate.

3. The bankruptcy court's July 30, 1974 order provided in pertinent part:

. . . that all persons, firms and corporations, including all creditors of the said debtor, and the representatives, agents, attorneys and servants of all such creditors, and all sheriffs, marshals and other officers, and their deputies, representatives and servants, are hereby jointly and severally enjoined, restrained and stayed from the commencement or continuation of any court or other proceeding against the debtor, or the commencement or continuation of any court proceeding to enforce any liens against the property of the debtor, until the further order of this court, and from removing, transferring, disposing of, or attempting in any way to remove, transfer or dispose of, or in any way to interfere with any property, assets or effects in the possession of the said debtor-in-possession, or owned by said debtor-in-possession, and in the possession of any officers, agents, attorneys or representatives of the debtor-in-possession; and all said persons are further enjoined, stayed and restrained from executing or issuing or causing the execution or issuance of the suing out of any Court of any writ, process, summons, attachment, replevin, execution or any other proceedings for the purpose of impounding or taking possession or interference with, any property owned by or in the possession of the said debtor-in-possession; and each and all of said persons, firms or corporations having process against the debtor are hereby jointly and severally restrained, stayed and enjoined from taking any steps, measures, proceedings, doing any act or thing in any action wherein the said debtor may be either plaintiff, defendant, petitioner or respondent, and from causing, procuring, suffering or permitting the same to be done until final decree herein.

Judge Parente, anchoring his ruling on precepts of exclusive jurisdiction, reasoned that the district court's concurrent consideration of the claim would unnecessarily fractionalize the arrangement proceedings. With the filing of the proof of claim, Judge Parente ruled, Borden surrendered to the bankruptcy court's summary jurisdiction and the controlling principles of the Bankruptcy Act. It was bound by the automatic stay embodied in Rule 11–44 and the court's separate restraining order, Judge Parente found, and was estopped from asserting the claim before the district court.[4] It is from this ruling that Borden appeals.

Appellant maintains that the bankruptcy court's section 314 restraining order and Rule 11–44 stay must fall to the command of section 68 which expressly permits a creditor, faced with a claim by the debtor, to set-off any mutual debt. The section's permissive nature, appellant argues, constitutes an exception to the bankruptcy court's exclusive jurisdiction. A creditor is not, appellant urges, required to choose between alternative methods of recovery. Thus, the filing of a proof of claim does not operate to estop the creditor from counterclaiming for the same relief in a plenary action initiated by the debtor-in-possession. To hold otherwise, appellant argues, would strip section 68 of its intended meaning.

## DISCUSSION

Antedating more sophisticated economic systems, the doctrine of set-off finds its origin in the antiquity of Roman law. Although not recognized during the early development of common law principles, it found its way into the English system first under notions of equity and later by statutory enactment in 1645. *See* Loyd, *The Development of Set Off,* 64 U.Pa.L.Rev. 541, 553–54 (1916). The right of set-off, however, did not long remain the privilege of only the financially solvent; it became part of the English bankruptcy scheme in 1705, and became a recognized doctrine of

American bankruptcy law with the passage of the Act of 1800. *See gen.* 4 *Collier on Bankruptcy* ¶ 68.01 (14th Ed. 1975): 3 *Remington on Bankruptcy* § 1431 (1908).

■ Minor changes in 1841 and 1867 and an important revision in 1938 produced the current section 68, 11 U.S.C. § 108. It provides:

A. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

B. A set off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision g of section 57 of this Act; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy.

The provision as it stands creates no new rights. *Studley v. Boylston National Bank of Boston,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913). It neither enlarges the doctrine nor grants the right of set-off where legal or equitable principles did not previously authorize it. *Cumberland Glass Mfg. Co. v. DeWitt,* 237 U.S. 447, 455, 35 S.Ct. 636, 639, 35 S.Ct. 636 (1915). Best stated section 68 merely recognizes the existence of the doctrine and provides a method by which it can be enforced after an adjudication of bankruptcy. *Studley v. Boylston National Bank of Boston,* 229 U.S. at 528, 33 S.Ct. at 808.

■ Thus, despite the seemingly mandatory language of section 68, the provision has long been held to be but permissive in nature. *Cumberland Glass Mfg. Co. v. DeWitt,* 237 U.S. at 455, 35 S.Ct. at 639; *In re Yale Express System, Inc.,* 251 F.Supp. 447, 449–50 (S.D.N.Y.1965) *vacated on other*

---

4. On the basis of Bankruptcy Judge Parente's decision, U.S. District Judge Cahn of the Eastern District of Pennsylvania entered an order dismissing the counterclaim "without prejudice to any rights Borden may have to appeal from the bankruptcy court's order."

*grounds,* 362 F.2d 111 (2d Cir. 1966). It is neither automatic nor self-executing. *Lowden v. Northwestern National Bank & Trust Co.,* 11 F.Supp. 929, 934 (D.Minn. 1935), *rev'd on other grounds,* 84 F.2d 847 (8th Cir.), *cert. denied,* 299 U.S. 583, 57 S.Ct. 109, 81 L.Ed. 430 (1936). If benefit is to be derived from the section, it must be invoked at the proper time in the proper forum, and the mutual character of the debt must be clearly evidenced. Whether a set-off is ultimately allowed lies within the discretion of the court; it must weigh competing interests and be guided by equitable principles. See *Lowden v. Northwestern National Bank & Trust Co.,* 298 U.S. 160, 164, 56 S.Ct. 696, 698, 80 L.Ed. 1114 (1936); *Cumberland Glass Mfg. Co. v. DeWitt.*

■ Drawn from its aged English counterpart, see 4 Anne, c. 17, § 11, section 68 was thought a means by which to adjust the rights and claims of adverse parties in ordinary bankruptcy for the purposes of liquidation and distribution. *Lowden v. Northwestern National Bank & Trust Co.,* 298 U.S. at 164, 56 S.Ct. at 698; 3 *Remington on Bankruptcy* § 1434; *see also, In re Yale Express System, Inc.,* 362 F.2d at 115–116. To the extent that the provision governs the course of Chapter XI proceedings, it is by analogy only and with due regard to the totality of circumstances surrounding the case. *Lowden v. Northwestern National Bank & Trust Co.,* 298 U.S. at 164, 56 S.Ct. at 698. The caveat is clear; the general provisions of the Bankruptcy Act apply under Chapter XI only insofar as they are consistent. 11 U.S.C. § 702; *Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co.,* 400 F.Supp. 280, 282 (N.D.Ga.1975). The rote application of ordinary bankruptcy principles to proceedings in reorganization or arrangement was never contemplated. For the latter's equitable nature demands flexibility.

As observed by Mr. Justice Cardozo in *Lowden v. Northwestern National Bank & Trust Co.,* 298 U.S. at 163–65, 56 S.Ct. at 698:

A proceeding to reorganize is not a bankruptcy, though an amendment to the Bankruptcy Act creates and regulates the remedy. From the fact without more than such a proceeding has been initiated, one cannot know that it will be necessary to have recourse to § 68, 11 U.S.C.A. § 108, which was meant in its enactment to prescribe the rule of set-off upon a distribution of the assets. That stage of administration, or the analogous stage of a revision of the debts, may never be attained in a proceeding to reorganize, though a petition has been approved and trustees have been appointed. If a plan of reorganization is not proposed or accepted, or, being proposed and accepted, is not confirmed by the court within a reasonable time, the whole proceeding may be dismissed (citations omitted); the title to the estate thus reverting to the debtor. By that time there may even be ability to pay demands as they mature. What is done at the beginning amounts to little more than a provisional sequestration to give protection for the future.

The right of set-off must fit itself to these procedural conditions. It is not susceptible of definition in the abstract without reference to the time or occasion of the controversy or the relation of the suit to the primary proceeding. Irrespective of the acceptance or confirmation of a plan, the trustees must have the power to gather in the assets and keep the business going. To exercise that power, they may find it necessary to sue, and the suit may turn upon the right of set-off, as it does in the case at hand. In a suit for such a purpose, a suit collateral to the main proceeding and initiated at a time when the outcome of that proceeding is still unknown and unknowable, § 68 of the statute does not control the disposition of the controversy exproprio vigore. It governs, if at all, by indirection and analogy according to the circumstances. The rule to be accepted for the purpose of such a suit is that enforced by courts of equity, which differs from the rule in bankruptcy chiefly in its greater flexibility, the rule in bankruptcy being framed in adaption to standardized conditions, and that in equity varying with the needs of the oc-

casion, though remaining constant, like the statute, in the absence of deflecting forces (citations omitted).

Albeit dictum, Justice Cardozo's reasoning was adopted by the Supreme Court in *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974), wherein the court, finding no exceptional equitable circumstances justifying a preference, refused to permit a creditor of the carrier to set-off a $19,319 damage claim in a reorganization proceeding brought under § 77 of the Bankruptcy Act, 11 U.S.C. § 205. So too, the Second Circuit in *Tyler v. Marine Midland Trust Co.*, 128 F.2d 927, 928 (2d Cir. 1942), although taking a less expansive approach, recognized that a creditor in a reorganization proceeding, where equitable considerations dictate, may be denied the privilege of set-off under the teaching of *Lowden*.

▆▆▆▆ We, in turn, follow suit and hold that the bankruptcy court, sitting as a court of equity in Chapter XI proceedings, may in an appropriate exercise of discretion defer or deny a set-off, otherwise sanctioned in ordinary bankruptcy, on equitable grounds. The unique posture of each and every Chapter XI proceeding renders them unsusceptible to standardized conditions. The needs of each debtor-in-possession, in fashioning an appropriate plan of arrangement, may be defined only by reference to the particu- lar problems it in the past has encountered. To deprive them of necessary flexibility would strip Chapter XI of its meaning. And to deny the court the discretion it needs in balancing the interests of competing parties would reduce its role to one of a ministerial nature.[5] We therefore, turn to examine the soundness of the bankruptcy courts's order and to consider whether it was an appropriate exercise of discretion or an abuse thereof.[6]

▆▆▆▆ Section 311 of the Act, 11 U.S.C. § 711 grants the bankruptcy court, upon acceptance of a petition in arrangement, exclusive jurisdiction over the debtor and its property wherever located. Resting as it does on ownership rather than mere possession, this jurisdictional grant exceeds that bestowed upon the court in ordinary bankruptcy. *Ben Hyman & Co., Inc. v. Fulton National Bank*, 423 F.Supp. 1006, 1008 (N.D.Ga.1976); *Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co.*, 400 F.Supp. at 284. Filing and acceptance, as well, triggers operation of the automatic stay provision embodied in Rule 11–44(a), Rules Bankr.Proc. Its impact is far reaching; the rule operates to restrain, without application by the debtor, the commencement or continued prosecution of any proceeding directed against the debtor or his property. The provision is not without its limitations, however. The rule cannot

**5.** The mere fact that there is mutuality of indebtedness does not entitle a creditor of the bankrupt estate to a set-off. Borden devotes a significant portion of its memorandum to the question of whether a claim for goods sold and delivered under contract can be set off against a liability for tortious conduct. While there has long been disagreement as to whether § 68 contemplates the tort-contract set off, *see gen.* 4 *Collier on Bankruptcy* ¶ 68.04[3], courts of late have adopted the view that it ought be permitted, *see e. g.*, *In re Diplomat Electric, Inc.*, 361 F.Supp. 1163, 1165 (S.D.Fla.1973), *aff'd*, 499 F.2d 342, 347 (5th Cir. 1974). This emerging view has been adopted by courts in this circuit, see *e. g.*, *New York Mens Credit Adjustment Bureau, Inc. v. Bruno-New York, Inc.*, 120 F.Supp. 495 (S.D.N.Y.1954). However, the existence of mutuality, assuming that the requirements of provability and allowability have been met, *see* 11 U.S.C. § 108(b)(1), only entitle the creditor to have the propriety of the set-off considered. It serves to satisfy a juris- dictional prerequisite; permission to proceed lies in the discretion of the court.

**6.** At this juncture, we find it necessary to remark about the unusual procedural posture in which this case comes to us. The district court, after deciding to reconsider its earlier order of dismissal, impliedly invited Bohack to seek an injunction from the bankruptcy court barring further prosecution of the counterclaim. Instead of exercising the discretion it retained, the district court deferred to Bankruptcy Judge Parente. Upon the issuance of the restraining order, Judge Cahn reaffirmed his order of dismissal, but apparently invited Borden to replead if it prevailed on this appeal. We, therefore, consider the soundness of the bankruptcy court's ruling mindful of the fact that Judge Cahn would seemingly allow the attempted set-off if we found no basis to the ruling below.

abridge or modify any substantive right. 28 U.S.C. § 2075; *In re Williams,* 422 F.Supp. 342, 344 (N.D.Ga.1976). It can, nonetheless, operate to defer the exercise of a given right, particularly where equity requires it. *See Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co.*

The ultimate effect of the self-executing stay cannot be assessed without reference to the findings and actions of the bankruptcy court. Upon appropriate application, the court is empowered to modify or annul the stay to permit prosecution of a single or several actions. Rule 11–44(e), Rules Bankr.Proc. On the other hand, the court can, in furtherance of its long range responsibilities, afford the debtor the security of a supplemental restraining order under the authority of section 314 of the Act, 11 U.S.C. § 714.

■ In an attempt to preserve the exclusivity of its jurisdiction, the bankruptcy court herein entered such a restraining order. Borden, however, never attempted to gain relief from either that or the automacy of Rule 11–44. Instead, upon receipt of the complaint charging anti-trust violations, Borden took it upon itself to interpose the counterclaim, believing it had the absolute right under section 68 to set-off its claim for goods sold and delivered. But as we have seen, the dictate of section 68 is but permissive, not mandatory. *Cumberland Glass Mfg. Co. v. DeWitt,* 237 U.S. at 455, 35 S.Ct. at 639. It was within the discretion of the district court, in the first instance, to grant or deny Borden the right to proceed. Judge Cahn, however, apparently deferred to the wisdom of the bankruptcy court which opined against unnecessary fractionalization. We find no abuse in Bankruptcy Judge Parente's discretionary exercise.

■ The sheer enormity alone of both the main plenary action and the Chapter XI proceedings bespeaks against the district court's concurrent consideration of Borden's counterclaim. Assigned the multi-district litigation for pre-trial purposes, the district court in Pennsylvania is faced with multiple claims asserted against some seventeen defendants. It need not, and ought not be further confounded by the necessary consideration of a totally unrelated claim emanating from a Chapter XI proceeding in a different district. As it is, the very purpose behind the Rule 11–44 stay and the bankruptcy court's section 314 restraining order is to prevent possible frustration of the rehabilitation effort through prejudicial dismembership or the adverse disposition of assets. *Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co.,* 400 F.Supp. at 284; 14 *Collier on Bankruptcy,* ¶ 11–44.02. We threaten both if we allow Borden to proceed on its counterclaim.

Moreover, successful prosecution of the counterclaim might unduly entangle the already complicated anti-trust litigation. While there is case law to the effect that an individual debt may be set-off against a claim of joint and several liability, *Tucker v. Oxley,* 5 Cranch 34, 3 L.Ed. 29 (1809); *Binenstock v. Willing,* 18 F.Supp. 262 (E.D. Pa.1936), aff'd, 88 F.2d 474 (3d Cir.), *rev'd on other grounds,* 302 U.S. 272, 58 S.Ct. 175, 82 L.Ed. 248 (1937), its practical effect, if permitted here, might prove undesirable. For if Bohack prevails in the anti-trust matter as against Borden and one or more other defendants, Borden could allow its co-defendants the benefit of its set-off. Not only would Borden gain a preference, but its co-defendants a windfall. The deterrent effect of the successful anti-trust prosecution would be diminished, and Bohack would be left without remedy for the injuries it suffered. Thus Borden, if allowed to proceed on the counterclaim, would be possessed of a two-edge sword; if alone adjudged liable, it would gain an otherwise unlawful preference; if one of several held accountable, it could seek to use the set-off as a shield protecting its co-conspirators from liability while innocent creditors are deprived of a potentially significant sum of monies.

■ Contrariwise, to relegate Borden to Chapter XI procedures would prove no injustice. Appellant would not be prejudiced if forced to seek a set-off in the context of arrangement proceedings. The same law-

ful preference can be obtained.[7] Any delay in relief is not serious enough to justify the tortuous complication of the anti-trust litigation which prosecution of the counterclaim might engender.

Lastly, but no less significant, is the uncertainty of the course each proceeding may take. It is highly conceivable that the antitrust litigation could linger for years. Final acceptance of any Chapter XI plan could be impeded by the pendency of the counterclaim.[8] Such inexcusable delay, to the detriment of remaining creditors, simply cannot be sanctioned.

Carefully weighed, the equities fall on the Bohack's side. Borden's claim for goods sold and delivered has no place in the multidistrict anti-trust proceeding. Accordingly, the decision of the bankruptcy court is

AFFIRMED.

---

7. To the extent that a § 68 set-off grants a creditor a preference, it is a lawful not a voidable preference. *Bel Marin Driwall, Inc. v. Grover*, 470 F.2d 932, 936 (9th Cir. 1972); *Tucson House Construction Co. v. Fulford*, 378 F.2d 734, 738 (9th Cir. 1967); *Miller v. Wells Fargo Bank International Corp.*, 406 F.Supp. 452, 467 (S.D.N.Y.1975).

8. This court has recently learned that the proposed plan of arrangement will be one of liquidation. Final hearings on the proposal are to commence as early as next month. Thus, settlement of the estate will almost surely precede resolution of the anti-trust matter.