UNITED STATES of America and Francis W. Murphy, Special Agent, Internal Revenue Service, Petitioners,

v.

ARTHUR ANDERSEN & COMPANY, Respondent,

and

Good Hope Industries, Inc., Intervenor.

Civ. A. No. 78–3227–F.

United States District Court, Massachusetts.

July 23, 1979.

Mary M. Brennan, Asst. U. S. Atty., Boston, Mass., Steven Z. Kaplan, Tax Div., Dept. of Justice, Washington, D. C., for petitioners.

J. Read Murphy, Murtha, Cullina, Richter & Pinney, Hartford, Conn., for respondent.

Chester M. Howe, Gaston E. Snow and Ely B. Bartlett, Boston, Mass., for intervenor.

## MEMORANDUM

FREEDMAN, District Judge.

### FACTS

This action is brought pursuant to Sections 7402(b) and 7604(a) of the Internal Revenue Code of 1954, 26 U.S.C. §§ 7402(b), 7604(a), seeking judicial enforcement of an Internal Revenue summons. Petitioner Francis V. Murphy is a Special Agent of the Internal Revenue Service (IRS), who is empowered to issue summons under authority granted to IRS by Section 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602. *See also* Treasury Regulation § 301.7602–1, 26 C.F.R. § 301.7602–1; and IRS Delegation Order No. 4 (Rev. 4, August 22, 1977), 42 Fed.Reg. 42915 (1977). Respondent Arthur Andersen & Company (Arthur Andersen) is a nationally-known accounting firm with offices in both Boston, Massachusetts and Hartford, Connecticut.

Petitioner is investigating the tax liability of Good Hope Industries, Inc. (Good Hope), intervenor herein, and its subsidiaries, which was heretofore the subject of a two-year audit by Revenue agents covering the fiscal years ending July 31, 1973, July 31, 1974, July 31, 1975 and July 31, 1976. Respondent has provided various professional services to Good Hope for the years in question, including auditing and prepara-

tion of financial statements, and tax preparation for the years ending July 31, 1973, 1974, and 1975.

On November 14, 1977, Special Agent Murphy issued a summons under 26 U.S.C. § 7602 [1] directing respondent Arthur Andersen to appear on November 30, 1977 to testify and to produce for examination certain statements, records, and papers allegedly relating to tax liabilities of Good Hope.[2] Respondent was personally served by in-hand delivery to the managing partner of its Hartford, Connecticut office, where the bulk of the records sought are located. On that same day, Special Agent Murphy mailed notice of service of summons upon a third party record-keeper to the taxpayer, Good Hope, as required by 26 U.S.C. § 7609(b). Neither Arthur Andersen nor Good Hope have questioned service. In a timely and proper manner, Good Hope directed Arthur Andersen not to comply with the summons, temporarily staying compliance under the terms of 26 U.S.C. § 7609(b)(2). At all relevant times, Good Hope has been debtor-in-possession under a Chapter XI Bankruptcy proceeding.

After intermittent attempts to negotiate mutually agreeable conditions for production of the requested material, an enforcement action was brought against Arthur Andersen in the District, of Connecticut (Misc. Civil Action H–78–37) on November 3, 1978. Good Hope exercised its right to intervene. 26 U.S.C. § 7609(b)(1). After a hearing on December 11, 1978, and over the

---

1. 26 U.S.C. § 7602 provides:

   For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability, the Secretary or his delegate is authorized—

   (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

   (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

   (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

2. The summons sought:

   (1) Opinions, consolidated financial statements, and accompanying notes to the consolidated financial statements of GOOD HOPE INDUSTRIES, INC. and SUBSIDIARIES, 622 State Street, Springfield, Massachusetts for the fiscal years ending 7/31/73, 7/31/74, 7/31/75, and 7/31/76. Also, any consolidated financial statements with accompanying notes for any interim periods during the fiscal years ending 7/31/73, 7/31/74, 7/31/75, and 7/31/76.

   (2) All workpapers, analyses, and/or summaries relative to the preparation and/or audit of the consolidated financial statements and accompanying notes to the consolidated financial statements of GOOD HOPE INDUSTRIES, INC. and SUBSIDIARIES for the fiscal years ending 7/31/73, 7/31/74, 7/31/75, and 7/31/76. Also, any workpapers, analyses, and/or summaries relative to any consolidated financial statements with accompanying notes for any interim periods during the fiscal years ending 7/31/73, 7/31/74, 7/31/75, and 7/31/76.

   (3) All workpapers, analyses, and/or summaries relative to the preparation of the Federal Consolidated Corporate Income Tax Returns of GOOD HOPE INDUSTRIES, INC. and SUBSIDIARIES, 622 State Street, Springfield, Massachusetts for the fiscal years ending 7/31/73, 7/31/74, 7/31/75, and 7/31/76.

   (4) Financial statements, accompanying notes to the financial statements, all workpapers, analyses, and/or summaries relative to the preparation and/or audit of the financial statements and all workpapers, analyses, and/or summaries relative to the preparation of the Federal Corporate Income Tax Returns for the fiscal years ending 7/31/73, 7/31/74, 7/31/75, and 7/31/76 pertaining to GOOD HOPE INDUSTRIES, INC. and ten subsidiaries. Also, any financial statements with accompanying notes for any interim periods during the fiscal years ending 7/31/73, 7/31/74, 7/31/75, and 7/31/76 and any workpapers, analyses, and/or summaries relative to the preparation of any interim financial statements with accompanying notes for the above-named corporations.

   (5) All correspondence including intercompany memorandums and consultation and/or management letters or memorandums relative to the GOOD HOPE INDUSTRIES, INC. or any of its subsidiaries.

objection of the government, the District Court, Clarie, C. J., granted Respondent's motion for change of venue under 28 U.S.C. § 1404. The Court noted that

> the corporation is a Massachusetts corporation and its principal place of business is in Massachusetts, its main conduct of that business is Massachusetts, it is in bankruptcy in Massachusetts, the original subpoena was issued to Springfield, Massachusetts; but notwithstanding the records, the records are temporarily, presently in Hartford, they have been ordered to be produced in Boston by the Bankruptcy Court; and the Court is of the opinion that that order is subject to review pursuant to this Court's order by the District Court itself at Boston.

The case came before me for hearing on March 22, 1979. After hearing testimony and argument, I allowed the parties extra time to file memoranda and affidavits, whereupon I took the case under advisement.

### QUESTIONS PRESENTED

As an initial matter, Arthur Andersen concedes its obligation to produce documents in many of the requested categories, under certain circumstances. Petitioner's Brief at 3.[3] As a matter of law this is correct, for extraction of possibly incriminating information from third party recordkeepers "is a necessary part of the process of law enforcement and tax investigation." *Couch v. United States,* 409 U.S. 322, 329, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1972).

Good Hope and Arthur Andersen focus their objection to compliance on two grounds:

1) That existence of a bankruptcy proceeding involving the taxpayer makes the Bankruptcy Court the appropriate forum for determination of any tax liability;

2) That IRS is not entitled to production of all the particular documents sought on two theories:

a) an accountant/client privilege, akin to the lawyer/client privilege

b) relevancy, in that the challenged documents were not used in preparation of tax returns.

### BANKRUPTCY

■ Intervenor Good Hope has urged that, after commencement of bankruptcy proceedings, jurisdiction to determine tax liability passes to the Bankruptcy Court by virtue of its authority to:

> Hear and determine any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction . . .

11 U.S.C. § 11(a)(2A).

I am not called upon to address this contention today, for the District Court's jurisdiction is based on quite different grounds. The summons in question was issued under a grant of authority:

> [f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax, . . . or collecting any such liability . . .

26 U.S.C. § 7602.

This investigative power has been repeatedly characterized as an inquisitorial

---

**3.** Unfortunately, the parties do not share a common terminology. Arthur Andersen categorizes its Good Hope files in this manner:

  1. Audit Workpapers including:
    a. Audit Engagement Letters
    b. Audit Work Programs
    c. Financial Statements
    d. Audit Schedules
    e. Tax Accrual Workpapers
    f. Audit Reports
    g. Miscellaneous correspondence
  2. Tax Return Workpapers including:
    a. Tax Arrangement Letters
    b. Tax Schedules
    c. Tax Returns (copies)
    d. Correspondence
  3. Tax Planning and Consultation Papers
  4. Administrative Services
  5. Billing and Time Sheets

Petitioner's Brief at 3. It objects to production of its Audit Work Programs, Tax Accrual Workpapers, and Tax Planning and Consultation papers.

power, analogous to that of a grand jury. *See United States v. Matras,* 487 F.2d 1271, 1274 (8th Cir. 1973) and cases cited therein. As such, IRS does not depend on a case or controversy for power to get evidence, "but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Powell,* 379 U.S. 48, 57, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964); *see also United States v. Bisceglia,* 420 U.S. 141, 146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1974).

It therefore seems clear that exercise of jurisdiction to enforce IRS summonses, under 26 U.S.C. §§ 7402(b) and 7604(a) does not necessarily intrude upon the jurisdiction of the Bankruptcy Court. The scope of allowable purposes for issuance of summonses encompasses a number of situations in which no assessment will result, as where IRS determines from the summoned materials that tax liability was correctly reported. Likewise, the result may be purely prospective, as where IRS seeks to determine the correctness of depreciation taken in prior years as it bears on the amount available currently. I conclude that the fact that material obtained by exercise of summons power may at some point be used in a proceeding properly before the Bankruptcy Court does not deprive this Court of jurisdiction over the issuance of such summonses.[4]

■ Intervenor next argues that Rule 11–44 of the Bankruptcy Rules of Procedure automatically stays all action against a debtor who files a Chapter XI petition.[5] Courts have construed the purpose behind Rule 11–44, and the underlying 11 U.S.C. § 714, as being "to prevent possible frustration of the rehabilitation effort through prejudicial dismemberment or the adverse disposition of assets." *Bohack Corp. v. Borden, Inc.,* 450 F.Supp. 367, 374 (E.D.N.Y. 1978); *see also* 14, *Collier on Bankruptcy,* ¶ 11–44.02. To compel production of documents will neither interfere with, nor diminish the debtors' property during the pendency of the Chapter XI proceedings, *Teledyne Industries, Inc. v. Eon Corp.,* 373 F.Supp. 191, 203 (S.D.N.Y.1974), where, as here, the documents are not in the hands of the debtor-in-possession, and will be returned to their custodian.

I thus find that neither the pendency of bankruptcy action, nor the provisions of Rule 11–44, operate to deprive this Court of jurisdiction to enforce an IRS summons.

## ACCESS TO PARTICULAR DOCUMENTS

Good Hope and Arthur Andersen next raise objections to production of the particular documents sought. The argument is in two parts: a claim of privilege as to three classes of documents, and a claim based on *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) as to all documents.

### *Accountant/Client Privilege*

■ Good Hope takes this opportunity to urge that the Court recognize a privilege between accountant and client, akin to the privilege recognized between attorney and client. *See* Intervenor's Brief at 14. In support of this proposition, both Good Hope and Arthur Andersen have submitted numerous affidavits addressing the need for confidentiality between accountant and client in order that frank disclosure might be fostered, the similarity of function be-

---

**4.** In an analogous situation, tolling of the statute of limitations has not been held to bar investigation for time barred years, where the information sought might be relevant to open years. *United States v. Giordano,* 419 F.2d 564, 568 (8th Cir. 1969), *cert. denied* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970); *Dunn v. Ross,* 356 F.2d 664, 666 (5th Cir. 1966); *see also United States v. Powell,* 379 U.S. 48, 57, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).

**5.** Rule 11–44(a) provides:

A petition filed under Rule 11–6 or 11–7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except a case pending under Chapter 10 of this title, for the purpose of the rehabilitation of the debtor or the liquidation of his estate.

tween accountant and lawyer in the tax field, and the similar manner in which both professions are regarded by the public. They argue that such privilege is particularly appropriate as to Audit Work Programs, Tax Accrual Workpapers and Tax Planning and Consultation Papers.[6] While I appreciate that valid policy questions are raised by the issues presented in this case, I am not inclined to recognize an accountant/client privilege on these facts. The expansive language of Section 7602, authorizing the summoning of *"any* person" for the taking of testimony and examination of "books, papers, records, or other dàta," invites liberal construction. Settled principles of statutory construction teach that we should be very hesitant to exempt a significant group from the broad sweep of § 7602, absent unambiguous directions from Congress. *United States v. Bisceglia,* 420 U.S. 141, 150, 95 S.Ct. 915, 43 L.Ed.2d 88 (1974). Applying this principle to the case at hand, and noting that the Supreme Court has explicitly stated "that no confidential accountant-client privilege exists under federal law . . . .," *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1972), I see no grounds for establishing an accountant/client privilege as to the Audit Work Programs, Tax Accrual Workpapers, and Tax Planning and Con-

sultation Papers, or any other documents enumerated in the summons.

*Right to Documents Requested*

▮ Arthur Andersen and Good Hope also argue that even if the material summoned is not inherently privileged, it is nonetheless unavailable to the government on the facts of this case. I note initially that IRS lacks inherent authority to summon production of private papers, being limited to the exercise of authority granted to it by Congress. *United States v. LaSalle National Bank,* 437 U.S. 298, 317 (fn. 18), 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). I note further that an IRS summons can be enforced only by the courts. 26 U.S.C. §§ 7402(b), 7604(b); *see United States v. Bisceglia,* 420 U.S. 141, 146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975). When a summons is challenged, the court is required to scrutinize it "to determine whether it seeks information relevant to a legitimate investigative purpose." *United States v. Bisceglia, supra* at 146, 95 S.Ct. at 919.

In conducting such scrutiny, the touchstone is a set of standards first enunciated by the Supreme Court in *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The Court there identified four

---

**6.** Witnesses for Arthur Andersen offered, and the government did not object to the following definitions:

> *Audit Work Program*: An audit work program is a document prepared for every audit engagement, which outlines the audit procedures that are to be applied to each of the accounts during the course of the audit.
>
>     \*    \*    \*    \*    \*    \*
>
> Each person performing one of those audit procedures is supposed to sign the program with his initials that they have completed it. Transcript at 100.
>
> *Tax Accrual Workpapers*: The tax accrual workpapers would consist of two or three basic documents. One would be a summary analysis of the transactions requested in the company's general ledger with respect to its income tax accounts. This analysis would show the amounts provided in the financial statements for the taxes for that year. It would show dates of payments and any other miscellaneous adjustments which might affect the balance of the accrual at the end of the year.

> It would also include a computation of the tax provision for the current year, whether or not the tax is payable in that year.
>
> A third major category of papers would be a memorandum discussing any items reflected in the financial statements as an income or an expense where the ultimate tax treatment is unclear.
>
> The memorandum would discuss each of these items with the objective of making a determination as to whether a tax provision should be made to cover the tax on that item either at the date of filing the return or the date of examination. Transcript at 101–102.
>
> *Tax Planning Memorandum*: It would contain essentially the observations and conclusions that the tax partner or tax personnel might have regarding the tax posture of the client. It would contain suggestions, let's say, for programs of tax minimization. It might contain observations about transactions that had already been completed with ideas as to what the exposures might be and as to what alternative positions might be taken. Transcript at 115.

conditions to be satisfied before a § 7602 summons would be enforced:

(1) [T]hat the investigation will be conducted pursuant to a legitimate purpose,

(2) that the inquiry may be relevant to the purpose,

(3) that the information sought is not already within the Commissioner's possession, and

(4) that the administrative steps required by the Code have been followed

*Powell, supra* at 57–58, 85 S.Ct. at 255.

■ (1) A "legitimate purpose," as used in *Powell*, requires that the production not be sought in furtherance of a purely criminal investigation. *See e. g. Donaldson v. United States*, 400 U.S. 517, 533, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970); *accord United States v. LaSalle National Bank, supra* 437 U.S. at 306–07, 98 S.Ct. 2357. The summons power of § 7602 is not available to broaden the scope of criminal discovery. *United States v. LaSalle National Bank, supra* at 312, 98 S.Ct. 2357.

Respondent has sought to establish a general intent on the part of IRS to conduct such a criminal investigation. Transcript at 50–52. By its very nature, a tax investigation may raise questions of both criminal and civil liability. *See e. g. United States v. LaSalle National Bank, supra* at 309, 98 S.Ct. 2357; *United States v. Crespo*, 281 F.Supp. 928, 935 (D.Md.1968). Recognizing this, the Supreme Court has refused to draw a line barring the use of summons power merely because a Special Agent has entered the case. *Donaldson v. United States, supra* 400 U.S. at 535, 91 S.Ct. 534.

■ The Supreme Court has formulated a two-pronged test to determine the legitimacy of the summons, and has placed the burden on those opposing the enforcement of the summons "to disprove the actual existence of a valid civil tax determination or collection purpose by the Service." *United States v. LaSalle National Bank, supra* 437 U.S. at 316, 98 S.Ct. at 2367.

The Court in *LaSalle* established, first, that "the summons must be issued before the Service recommends to the Department of Justice that a criminal prosecution which would reasonably relate to the subject matter of the summons, be undertaken." *Id.* at 318, 98 S.Ct. at 2368. Through affidavit in support of the Petition for Enforcement, and through testimony before me, (Transcript at 45), Special Agent Murphy has represented that from the time of issuance of the summons to the time of the hearing, no recommendation for criminal prosecution has been made to the Department of Justice. Arthur Andersen and Good Hope do not deny these representations.

The second element of the *LaSalle* test requires that "the Service at all times must use the summons authority in good-faith pursuit of the Congressionally authorized purposes of § 7602. . . ." *Id.* at 318, 98 S.Ct. at 2368. This determination is to be made by reference to the institutional posture of the Service. *Id.* at 316, 98 S.Ct. 2357. Arthur Andersen and Good Hope have sought to establish bad faith by pointing again to the Chapter XI Bankruptcy proceedings.

They argue that filing of proof of claim in the Chapter XI Bankruptcy proceeding in April 1978, after issuance of the summons, terminated the civil element of the proceedings. They therefore suggest that enforcement could only be in furtherance of solely criminal proceedings. However, as noted above, I find that the jurisdiction of the Bankruptcy Court to determine "any question arising as to the amount or legality of any unpaid tax" 11 U.S.C. § 11(a)(2A) neither necessarily conflicts with, nor bars, the power of IRS to summon for "the purpose of ascertaining the correctness of any return, making a return where none has been made, [and] determining the liability of any person for any internal revenue tax. . . ." 26 U.S.C. § 7602. Consequently, I hold that the summoned documents may be pertinent with respect to adjustment of the claims already filed, and with respect to new claims for the year 1976.[7]

---

7. The government asserts that the proofs of claim filed in bankruptcy for the years 1973,

1974, and 1975, and subsequent to the issuance of the summons, were intended to permit the

Therefore, on the basis of Special Agent Murphy's affidavit that the material sought is necessary for the determination of the federal tax liabilities of Good Hope for the years in question, I hold that there has been a sufficient showing that the summons was issued pursuant to a legitimate purpose. *See e. g. United States v. Marine Midland Bank*, 585 F.2d 36, 38 (2d Cir. 1978).

■ (2) Respondent's strongest argument rests upon the second prong of *Powell* —the requirement of relevancy. As an initial matter, I do not understand the respondent to resist on relevancy grounds production of material actually employed in determination of income and in tax preparation. Respondent's Brief at 9. However, they strenuously urge that Audit Work Programs, Tax Accrual Workpapers, and Tax Planning and Consultation Papers fall into a different category and are not relevant. Respondent's Brief at 10. The gist of their argument is that such materials are not "factual," in that they do not form a basis for preparation of tax returns. Respondent's Brief at 6–29.

In reliance upon *United States v. Coopers & Lybrand*, 413 F.Supp. 942 (D.Colo.), aff'd 550 F.2d 615 (10th Cir. 1977), respondents consequently argue that the government has failed to establish the relevance of the contested documents to its investigation. I am not inclined to adopt the reasoning of *Coopers & Lybrand*.

I rely upon a close reading of § 7602 to determine that the summoned documents are both relevant and reachable. In furtherance of a legitimate purpose, there is authority to summon *"any . . . person . . . to produce such books, papers, records, and other data as may be relevant or material* to such inquiry." 26 U.S.C. § 7602(2). [Emphasis added]. This expansive language invites, and has generally been accorded, a liberal construction. *United States v. Bisceglia, supra* 420 U.S. at

149, 95 S.Ct. 915; *see also United States v. Continental Bank & Trust*, 503 F.2d 45, 50 (10th Cir. 1974); *United States v. Humble Oil & Refining Co.*, 488 F.2d 953, 958, and cases cited at 958, n. 11 therein (5th Cir. 1974) vacated 421 U.S. 943, 95 S.Ct. 1670, 44 L.Ed.2d 97 (1975).

It is true that some of the cases cited to me by respondents have made use in tax preparation the touchstone of relevancy. *See United States v. Smith*, 373 F.Supp. 14 (1974); *United States v. Coopers & Lybrand, supra.* Nevertheless, I do not find that such a result is compelled by the statutory language.

■ The commonly articulated interpretation of "may be relevant" turns upon "whether the inspection sought 'might have thrown light upon' the correctness of the taxpayer's return." *Foster v. United States*, 265 F.2d 183, 187 (2d Cir. 1959), *cert. denied*, 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1960); *see also United States v. Harrington*, 388 F.2d 520, 523 (2d Cir. 1968); *United States v. Matras*, 487 F.2d 1271, 1274 (8th Cir. 1973); *United States v. Noall*, 587 F.2d 123, 125 (2d Cir. 1978) (appeal pending). Subsequent cases have reflected a refinement of "might" expressed in terms of whether there is, in the particular circumstance, "an indication of a realistic expectation rather than an idle hope that something may be discovered." *United States v. Harrington, supra* at 524; *accord United States v. Matras, supra* at 1274. The summons was prepared by Special Agent Murphy in cooperation with another Special Agent and two Revenue agents. The Revenue agents had been conducting an examination of Good Hope books and records for some time before Special Agent Murphy entered the case. Transcript at 39, 65–66. I find that the collective familiarity of the agents involved in the joint investigation as to Good Hope records will suffice

commissioner to make timely assessments before the running of the statute of limitations for assessments. Petitioner's Post-Hearing Memorandum at 3. With respect to this, I note that the Supreme Court has recognized that "[t]he

rights and obligations of the parties became fixed when the summons was served . . . ." *Couch v. United States*, 409 U.S. 322, 329 n. 9, 93 S.Ct. 611, 616, 34 L.Ed.2d 548.

to establish a "realistic expectation" of relevancy. It is clear that expectation need not rise to the level of probable cause in order to justify examination. *United States v. Powell, supra* 379 U.S. at 51, 85 S.Ct. 248; *United States v. Acker*, 325 F.Supp. 857, 862 (S.D.N.Y.1971). Special Agent Murphy does not, nor does he need to guarantee relevance in fact in order to satisfy the requirement that the summoned documents "may be relevant." *See United States v. Acker, supra.*

Respondents have urged, on the authority of *United States v. Matras, supra,* that relevancy "connotes and encompasses more than 'convenience'." *Id.* at 1275. While this may be true, *Matras* is readily distinguished from the case at hand. In *Matras,* IRS sought budget proposals as a "roadmap" for their investigation; the court properly noted that it was not the proposals but the actual budgets as implemented that had tax consequences. Where, as here, procedures and systems of analysis were applied directly to actual transactions, they are clearly more than "convenient" or a "roadmap" for the joint investigation. Indeed, such evidence of knowledge of potential discrepancies appears to go directly to the heart of determining whether there has been civil or criminal fraud.[8]

■ There is, in fact, broad support for the position that relevancy does not turn on whether the summoned material was used in preparing tax returns. *See e. g. United States v. Noall, supra* (audit reports and related workpapers); *United States v. Shlom*, 420 F.2d 263 (2d Cir. 1969) *cert. denied* 397 U.S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970) (record of receipts, kept for sales monitoring purposes); *United States v. Acker, supra* (full minutes of board meetings). I am of the opinion that the results in this set of cases better reflect a liberal interpretation of § 7602. The deci-

sion in *Noall* is instructive on this point. The Court there initially emphasized that the statutory language is "may be relevant," denoting a low threshold of relevancy. *United States v. Noall, supra* at 125. In the final analysis, the determination of relevancy in fact must be deferred until the documents are produced and analyzed. While the audit reports found relevant in *Noall* are not at issue here, the underlying rationale for ordering production is particularly persuasive. As expressed by that Court, the "Commissioner's interest lies in whether the tax returns correctly reflected . . . income, not simply whether they were correctly prepared from the books of accounts and other records used." *United States v. Noall, supra* at 126. On the facts of this case I am satisfied that the information sought "may be" relevant to the investigation, and that *Powell* is satisfied.

■ (3) The third prong of *Powell* requires that the material sought not already be in the possession of IRS. As to the Audit Work Programs, Tax Accrual Workpapers, and Tax Planning and Consultation Papers, IRS clearly does not already have possession. As to the balance of the summoned materials, Good Hope argues that over the course of the two-year IRS audit, the Service acquired possession of "the information contained in the summonsed documents."[9] Intervenor's Brief at 17. However, I am persuaded that Good Hope misstates the relevant standard. Section 7602 refers in clear terms to "books, papers, records, or other data," and not to copies thereof. The Service is entitled to verify the accuracy of the questioned returns by reference to the original material, and does not have to prove error or tampering before it may have the originals. *See United States v. Davey*, 543 F.2d 996, 1001 (2d Cir. 1976).

8. In the course of testimony, a witness for Arthur Andersen conceded that the three contested categories of documents might indeed contain factual discussion of the taxpayer's status. Transcript at 112. Inasmuch as the witness was not personally familiar with the Good Hope files, I do not rely upon this admission in reaching my decision.

9. In support of their position, Good Hope notes that IRS prepared a 557-page report summarizing the results of the audit.

I do not understand Arthur Andersen and Good Hope to argue that IRS holds any significant part of the 55 linear feet of Good Hope records in Arthur Andersen's Hartford office alone. Special Agent Murphy estimates that IRS holds only three or four file binders containing copies of original records—many of which are illegible. Transcript at 68. Consequently, I hold that production of the summoned documents will not violate the third prong of *Powell*.

(4) Arthur Andersen and Good Hope do not seriously argue that IRS has violated the fourth prong of *Powell*. Good Hope does argue that IRS has gone beyond the usual procedure suggested by §§ 4024 *et seq.* of the IRS manual, (Intervenor's Brief at 15), but the test is clearly whether the IRS has followed the administrative steps required by the Code. *United States v. Powell, supra* 379 U.S. at 57, 85 S.Ct. 248.

## MISCELLANEOUS ISSUES

■ Good Hope alleges that the breadth of the summons constitutes an unreasonable search and seizure within the meaning of the Fourth Amendment. Intervenor's Brief at 17. The mere fact that the summons encompasses a large volume of relevant materials does not render it unreasonable. The applicable files are clearly identified. I will not bar discovery on these grounds.

■ Both Arthur Andersen and Good Hope offer what seems to be a Fifth Amendment objection to the taking of their property by summons. Good Hope's claim that the government should share part of the original cost of preparing the documents (some $2,000,000) before it may examine them is patently frivolous, and I reject it. Arthur Andersen additionally claims, through counsel, that the estimated cost of compliance is in excess of $125,000. Transcript at 31. While that sum is large, there is no evidence that it is unreasonable in the course of Arthur Andersen's business. Moreover, as an incident of Arthur Andersen's duty to cooperate with a lawful summons there is a concomitant duty to "shoulder the financial burden of cooporation." *United States v. Dauphin Deposit Trust Co.,*

385 F.2d 129, 130 (3d Cir. 1967) *cert. denied* 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981 (1968); *see also United States v. Continental Bank & Trust Co.,* 503 F.2d 45, 48 and cases cited therein (10th Cir. 1974). On the facts, I do not find that the cost to Arthur Andersen "exceeds that which respondent may reasonably be expected to bear as a cost of doing business," *see United States v. Friedman,* 532 F.2d 928, 938 (3d Cir. 1976), absent a showing that the same material could be produced in a significantly less expensive manner. *See United States v. Friedman, supra; United States v. Dauphin Deposit Trust Co., supra.*

■ Arthur Andersen further argues that some of the files are the subject of continuing work, (Respondent's Brief at 30), and that those ordered to be produced should be examined in Hartford. Absent a showing of what percentage of files are currently active, respondent has not established that it would be unduly onerous to copy such files and make the originals available to IRS. Similarly, there has been no showing that production of the documents will work a hardship on the bankruptcy proceedings. I, therefore, reject this argument.

■ During the course of this litigation, Good Hope secured an order directing certain IRS agents involved in this investigation to appear for depositions with certain documents. The government seeks an order enjoining such discovery. Had Good Hope initially sought discovery in the course of this enforcement proceeding, it would have first been required to present evidence showing that enforcement of the summons would constitute an abuse of the District Court's process. On the basis of the evidence presented, and of Special Agent Murphy's testimony, I would have found no such showing. Consequently, on the authority of *United States v. Salter,* 432 F.2d 697 (1st Cir. 1970), I would have denied Good Hope discovery as against IRS. The government alleges that Good Hope has sought to circumvent this Court to improperly secure a discovery order from the

Bankruptcy Court. On the facts presently before me, I am unable to conclude that the discovery order is irrelevant to any legitimate purpose of the Bankruptcy Court, and so I decline to interfere with that Court's jurisdiction. Petitioner's motion for an Order Enjoining Discovery is denied.

### CONCLUSION

For the above-stated reasons, the Petition to Enforce Internal Revenue Summons is allowed, and the summons shall be enforced according to its original terms. Petitioner's Motion for Order Enjoining Discovery is denied without prejudice.